

NUMBER 13-13-00692-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

FRANCISCO MATAMOROS, Appellant,

v.

THE STATE OF TEXAS, Appellee.

---

**On appeal from the 357th District Court
of Cameron County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Garza, Benavides and Longoria
Memorandum Opinion by Justice Garza**

Appellant, Francisco Matamoros, was convicted of one count of continuous sexual

abuse of a young child, a first-degree felony, *see* TEX. PENAL CODE ANN. § 21.02 (West,

Westlaw through 2015 R.S.), and two counts of sexual assault of a child, a second-degree felony. *See id.* § 22.011 (West, Westlaw through 2015 R.S.). Matamoros was sentenced to life imprisonment. On appeal, he challenges his convictions by twenty-eight issues. We affirm.

## I. BACKGROUND

Matamoros was charged by indictment with one count of continuous sexual abuse of a young child (Count I), three counts of indecency with a child by contact (Counts II, VI, and VII) and three counts of sexual assault of a child (Counts III, IV, and V).

At trial, Child Protective Services ("CPS") investigator Celestina Novoa testified that she received a call concerning sexual abuse of Y.M., Matamoros's minor child, on April 16, 2012. The call was made by Y.M.'s paternal aunt. As a result of the call, Novoa visited the home of another of Y.M.'s paternal aunts at Rosemont Apartments in Harlingen, Texas. Y.M. was present at the house and was "scared and crying." Novoa interviewed Y.M. in the presence of a co-worker and a law enforcement officer, but outside the presence of Y.M.'s family members. The interview was audio-recorded. Novoa also interviewed Y.M.'s brothers, aunt, and grandmother. According to Novoa, Y.M. reported that her mother died in 2010, her paternal aunt is her primary caregiver, and she had not had contact with the maternal side of her family for over a year. Y.M. told Novoa that she lived with her father and her three brothers in a different apartment in the same complex. Novoa agreed with the prosecutor that Y.M. was able to "give [her] details" about the sexual abuse. A safety plan was instituted, and Y.M. was placed with her paternal grandmother at Matamoros's request.

According to Novoa, CPS designated the final disposition of the case as "reason

2

to believe." This final disposition was based on "facts gathered during the investigation," including "the consistency of statements provided by [Y.M.], information shared through the siblings during their interviews," and medical records.

Rebecca Cruz, an officer with the Harlingen Police Department, testified that she became involved in the case on April 18, 2012. She stated that Y.M. was fourteen years of age at the time she first made an outcry of abuse to her paternal aunt, Claudia Matamoros. Cruz stated that she was present when Y.M. was interviewed at the Children's Advocacy Center. Cruz agreed with the prosecutor that, during this interview, Y.M. was "able to articulate in accordance with her age and her maturity what had happened to her"; was "able to provide details about what had happened to her"; was able to "describe specific sexual acts"; and was "able to provide a clear suspect for what had happened to her." Cruz also obtained results from an examination of Y.M. by a sexual assault nurse examiner ("SANE"). As a result of her investigation, she arrested Matamoros for aggravated sexual assault of a child. Cruz conceded on cross-examination that she did not interview Matamoros, and police did not obtain any DNA evidence.

Sonia Eddleman, a registered nurse, testified as an expert witness. She stated that a SANE examination of Y.M. was performed on April 17, 2012, and that the nurse who performed the exam "is on the team that I coordinate, and I review a hundred percent of the records from this team." At the examination, Y.M. provided a medical history which, according to Eddleman, was transcribed verbatim by the nurse. Eddleman read Y.M.'s medical history statement, which appears in hospital records admitted into evidence, as follows:

3

Patient states, "It was with my Dad, Francisco Matamoros. He like had sex with me. He would put his dick in my front part (patient indicates female sexual organ by pointing). He would also put it in my butt (patient indicates anus by pointing) but not all the way in. Last time was weeks ago, like at the beginning of the month. I was in 5th grade when it started, now I am in 8th grade and he's still doing it."

Patient also states, "When I was in 4th grade my Dad would touch my front part (patient indicates female sexual organ by pointing) with his finger."

According to the hospital records, Y.M.'s physical examination revealed a "well-healed tear to her hymen at 6 o'clock" that measured one-third of a centimeter. There were no other injuries observed on Y.M.'s vagina or anus. Eddleman stated that no physical evidence was collected because more than 96 hours had passed since the last incident was reported to have occurred.

The hospital records from the SANE examination further stated that Y.M. was "[c]alm, cooperative, crying while relating history, good historian, good eye contact." Eddleman agreed, over defense counsel's objection, that this type of "demeanor and attitude" is "consistent with a person who suffered a traumatic event." She also testified, over objection, that the examination results are consistent with Y.M.'s report of abuse. On cross-examination, Eddleman agreed with defense counsel that "there are things other than sexual intercourse that could cause a tear to the hymen." She conceded that she did not personally perform the SANE examination, nor did she personally prepare the report.

Liliana De La Cruz testified that she is a paternal aunt of Y.M. and that Y.M.'s birthday is June 25. She testified that Y.M. was fourteen years old when she was in eighth grade during the 2011–2012 school year; thirteen years old when she was in seventh grade during the 2010–2011 school year; twelve years old when she was in sixth grade during the 2009–2010 school year; eleven years old when she was in fifth grade during

4

the 2008–2009 school year; and ten years old when she was in fourth grade during the 2007–2008 school year. De La Cruz stated that Matamoros is about 44 years old and is one of De La Cruz's older brothers.

De La Cruz stated that she received a message from Y.M. in April 2012 which led her to believe that Y.M. was in trouble at school. She went to meet Y.M. at a park. Y.M. was "[r]eal quiet, serious, nervous" and crying. De La Cruz stated that, as a result of what Y.M. told her, she "didn't know what to do," was "nervous and . . . went in[to] shock." De La Cruz testified that she was the first adult that Y.M. talked to about what they discussed.[1] De La Cruz denied having reported anything to CPS. She said that she has never since spoke to Y.M. about the matter and that Y.M. has never told her that she lied or that it did not happen.

The following colloquy occurred during the prosecutor's direct examination of De La Cruz:

> Q.    Do you know if [Y.M.] wants to testify in court?
>
> A.    Yes.
>
> Q.    Does she want to?
>
> A.    No.
>
> Q.    Did she write a letter?
>
> A.    Yes.

---

[1] Prior to trial, the State designated De La Cruz as an outcry witness under article 38.072 of the code of criminal procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.072 (West, Westlaw through 2015 R.S.) (providing that an out-of-court statement by a child describing a sexual offense is not inadmissible because of the hearsay rule if, among other things, the statement was "made to the first person, 18 years of age or older, other than the defendant, to whom the child made a statement about the offense" and "the trial court finds, in a hearing conducted outside the presence of the jury, that the statement is reliable based on the time, content, and circumstances of the statement"). However, the State did not seek at trial to admit De La Cruz's testimony under this statute, perhaps because there were conflicting accounts at trial regarding the identity of the first adult to whom Y.M. reported the abuse. *See id.*

Q. And who did she give that letter to?

A. To me.

Q. And who did you give it to?

A. To [defense counsel]. And I told you about it, but you never asked me for it.

Q. So you never gave it to me?

A. No.

On cross-examination, defense counsel asked De La Cruz about Y.M.'s letter and offered it into evidence. The trial court admitted the handwritten, signed and notarized letter into evidence and permitted defense counsel to publish it to the jury. The letter reads:

I [Y.M.] have decided to drop the charges against my dad Francisco Matamoros. I am not willing to keep the charges against my dad. I want to see him with my brothers and I as a family again. If the law chooses to keep investigating that's fine but I want to be left out of the picture. I don't want anything to do with it any more, I want my family back and that's what matters to me and makes me happy. I can't say what the law wants me to say or say what they want to hear. I don't want to keep talking about this situation any more and nobody or nothing will change my mind. My final decision has been made.

De La Cruz further testified on cross-examination that Matamoros has a "good" reputation for being a law-abiding and truthful person. On re-direct examination, she admitted that she did not know that police were called to Matamoros's home on four separate occasions in 2007 and 2008 to investigate alleged violence committed by Matamoros against his wife.

Eric Matamoros, Y.M.'s brother, testified as to his family's sleeping arrangements at the Rosemont Apartments. He stated that he shared a room with his two brothers, and Y.M. would sleep with their father.

Amanda Corkhill testified that she is a licensed professional counselor and that

6

she treated Y.M. from July 2012 to July 2013. She said Y.M. "wasn't sleeping well," "wasn't eating well," was "very edgy and irritable," was "lethargic," was "isolative," was "keeping herself from any social kind of or even intra-familial contact," and had suicidal thoughts. Corkhill stated that Y.M. reported she had been a victim of sexual abuse. Specifically, Y.M. reported that in "third and fourth grade her father fondl[ed] her and eventually digitally penetrat[ed] her with his finger." Further, according to Corkhill, Y.M. reported that, in fifth grade, while her mother was working late, her "father would come and, I guess, babysit, what she called it. And so when he was there, it was at those instances that he would—well, he would sleep with her in the same bed. And those instances when he would penetrate her with his penis." According to Corkhill, Y.M. "goes on to discuss instances where she would push, hit, kick him, I mean, just about anything to stop him from getting close to her in that way." Corkhill stated that Y.M. never recanted her story or told her it was not true. On cross-examination, Corkhill testified that Y.M. also reported she had "acted out violently" toward her father.

Y.M. testified that she would sleep in the same bed as her father in his bedroom at Rosemont Apartments. She stated that she currently lives with her grandparents "[b]ecause CPS placed me there" due to the "charge against my dad." She stated she knew that her father had been charged with "sexual abuse." The following colloquy occurred on the prosecutor's direct examination of Y.M.:

> Q. And do you know—did you ever to speak to anyone about that charge?
>
> A. My aunt.
>
> Q. And what made you talk to your aunt about it?
>
> A. I don't know. I just did.

7

Q. What did you tell her?

A. I told her what was going on.

Q. And what was it that was going on?

A. That—I don't want to talk about it.

Q. I know that this isn't easy for you, but it's very important that you just tell what you do know, okay?

I see that you keep looking over. If it helps to just stay focused on me or to look at the jury, do that. Do whatever you need, okay?

What is it that was going on?

A. I would rather not say.

Y.M. denied telling either her therapist or CPS about what she told her aunt. She agreed, however, that she told the "[s]ame thing I told my aunt" to a forensic interviewer at the Children's Advocacy Center. When asked "What did you tell her?", Y.M. replied: "I don't want to say." The following colloquy occurred:

Q. Did you tell [the forensic interviewer] when it first started happening?

A. Yes.

Q. When was that?

A. Somewhere between fifth and sixth grade.

Q. Did you tell her when it stopped happening?

A. I don't remember.

Q. When did it stop happening?

A. Eighth grade year.

Q. Did you tell her who was doing it?

A. Yes.

Q. And who did you say?

A. My dad.

. . . .

Q. And what was happening at that time?

A. I don't want to talk about that.

The prosecutor asked the trial court for permission to treat Y.M. as a hostile witness by asking leading questions.[2] *See* TEX. R. EVID. 611(c). After hearing argument from counsel, the trial court denied the prosecutor's request to ask leading questions.

At the conclusion of Y.M.'s direct examination, both parties rested. The State then announced its intent to dismiss Counts II, III, VI, and VII. The jury convicted Matamoros on the remaining counts. After hearing punishment evidence, the jury assessed punishment at life imprisonment for Count I; twenty years' imprisonment and a fine of $10,000 for Count IV; and twenty years' imprisonment and a fine of $10,000 for Count V.[3] The trial court stated that Matamoros would be punished in accordance with the jury's verdict. This appeal followed.

## II. DISCUSSION

On appeal, Matamoros raises the following issues: (1) the evidence was insufficient to support conviction on count I; (2) the evidence was insufficient to support conviction on count IV; (3) the evidence was insufficient to support conviction on count V; (4–5) the trial court erred by denying his motion for mistrial after the prosecutor made allegedly improper remarks at closing argument; (6–8) his constitutional and statutory right to remain silent was violated by the prosecutor's allegedly improper remarks; (9) he

---

[2] The prosecutor did not otherwise object to Y.M.'s failure to answer her questions, nor did she ask for Y.M. to be held in contempt, stating: "We wouldn't ever move the Court to hold a juvenile in contempt, but this [permission to ask leading questions] at least gives us one more avenue by which to develop testimony."

[3] The judgment of conviction merely states that Matamoros was sentenced to life imprisonment.

9

was denied a fair and impartial trial because the prosecutor "attacked [him] over the shoulder of [his] attorney" in closing argument; (10–12) the trial court erred by allowing witnesses to comment on Y.M.'s credibility; (13–14) the trial court erred by admitting the hospital records and Eddleman's testimony regarding those records; (15–19) the trial court deprived him of his constitutional right to confront witnesses by allowing Eddleman and Corkhill to testify regarding Y.M.'s statements; (20) the trial court deprived him of his right to confront witnesses by allowing Eddleman to testify regarding the SANE examination report; (21) trial counsel provided ineffective assistance; (22) the prosecutor failed to timely disclose CPS records; (23) the trial court erred by failing to grant a recess or continuance after the CPS records were provided to defense counsel; (24) the trial court erred by denying him the right to have CPS records prior to cross-examination of the CPS case worker; (25) the trial court erred by failing to quash the venire panel; (26) the trial court erred in denying him an additional peremptory challenge at voir dire; (27) the trial court erred by not instructing the jury on the lesser-included offense of indecency with a child; and (28) cumulative error deprived him of a fair trial.

## A.    Sufficiency of the Evidence

We first address Matamoros's evidentiary sufficiency arguments. *See, e.g., Lucas v. State*, 245 S.W.3d 611, 612 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (noting that issues calling for rendition of judgment should be considered before issues calling for remand); *see also* TEX. R. APP. P. 43.3.

### 1.    Standard of Review and Applicable Law

In reviewing the sufficiency of evidence supporting a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier

10

of fact could have found the essential elements of the crime beyond a reasonable doubt. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19). When the record of historical facts supports conflicting inferences, we must presume that the trier of fact resolved any such conflicts in favor of the prosecution, and we must defer to that resolution. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010).

Sufficiency is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Id.*

A person acts intentionally with respect to the result of his conduct when it is his conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a) (West, Westlaw through 2015 R.S.). A person acts knowingly with respect to the result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

11

**2.      Analysis**

A hypothetically correct jury charge would instruct the jury to find Matamoros guilty as charged in Count I if, on or about September 1, 2007 through July 1, 2011:  (1) he committed two or more acts of sexual abuse against Y.M. during a period that is thirty or more days in duration; and (2) at the time of the commission of each of the acts of sexual abuse, he was seventeen years of age or older and Y.M. was younger than fourteen years of age.  *See id.* § 21.02(b).  "Sexual abuse" includes indecency with a child as defined in penal code section 21.11(a)(1) "if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child."  *Id.* § 21.02(c)(2); *see id.* § 21.11(a)(1) (West, Westlaw through 2015 R.S.) ("A person commits an offense if, with a child younger than 17 years of age, . . . the person . . . engages in sexual contact with the child or causes the child to engage in sexual contact.").  "Sexual abuse" also includes aggravated sexual assault as defined in penal code section 22.021.  *Id.* § 21.02(c)(4); *see id.* § 22.021(a)(1)(B)(i), (a)(2)(B) (West, Westlaw through 2015 R.S.) ("A person commits an offense . . . if the person . . . intentionally or knowingly . . . causes the penetration of the anus or sexual organ of a child by any means" and "the victim is younger than 14 years of age . . . .").

Matamoros argues on appeal that the only evidence regarding "specific acts of sexual misconduct" was the "hearsay testimony" from Eddleman and Corkhill.  That may be true, but hearsay testimony is admissible as evidence under certain circumstances.  *See, e.g.*, TEX. CODE CRIM. PROC. ANN. art. 38.072 (West, Westlaw through 2015 R.S.); TEX. R. EVID. 803(4).  In any event, we do not consider issues of admissibility in our sufficiency review—instead, we consider all evidence actually admitted at trial, even

evidence that may have been erroneously admitted. *See Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004). Here, that evidence included the SANE examination report which contained Y.M.'s statement of medical history. In that statement, Y.M. reported that: (1) when she was in fourth grade, Matamoros would touch her vagina with his finger; and (2) beginning when she was in fifth grade and continuing until the beginning of April 2012, Matamoros would penetrate her vagina and anus with his penis. The evidence admitted at trial also included the testimony of Eddleman and Corkhill. Eddleman testified that the results of the SANE examination were consistent with Y.M.'s report of abuse. Corkhill testified that Y.M. reported that: (1) when she was in third and fourth grade, Matamoros "fondl[ed] her and eventually digitally penetrat[ed] her with his finger"; and (2) when she was in fifth grade, while her mother was working late, Matamoros "would penetrate her with his penis."

Matamoros contends that "[t]he statements from the SANE nurse and the therapist may raise an inference of penetration or touching, [but do] not clearly describe the alleged offense that appellant penetrated or touched the child's sexual organ in the 30 day time frame required." We disagree. The testimony of Eddleman and Corkhill, along with the SANE examination report, established that Matamoros committed two or more acts of sexual abuse, as defined in the statute, against Y.M. over a period of thirty or more days. *See* TEX. PENAL CODE ANN. § 21.02(b).[4] Specifically, this evidence established that: (1) Matamoros committed indecency with a child by touching Y.M.'s vagina with his finger when she was in fourth grade, *see id.* § 21.11(a)(1), (c)(1); (2) Matamoros committed

---

[4] It is undisputed that, at the time of each of the alleged acts of sexual abuse, Matamoros was seventeen years of age or older. *See* TEX. PENAL CODE ANN. § 21.02(b)(2) (West, Westlaw through 2015 R.S.).

13

aggravated sexual assault by penetrating Y.M. with his finger when she was in third or fourth grade, *see id.* § 22.021(a)(1)(B)(i), (a)(2)(B); and (3) Matamoros committed aggravated sexual assault by penetrating Y.M.'s vagina and anus with his penis from when Y.M. was in fifth grade to when she was in eighth grade. *See id.*; *see also Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (noting that intent may generally be inferred from circumstantial evidence such as acts, words, and conduct of the appellant).

We note further that, though Y.M. refused to describe the alleged abuse at trial, she did state that she knew her father had been charged with "sexual abuse" and, when asked if she "spoke to anyone about that charge," she responded that she told her aunt "what was going on." She testified that she told the "[s]ame thing [she] told [her] aunt" to the forensic interviewer at the Children's Advocacy Center. When the prosecutor asked Y.M. whether she told the forensic interviewer "when it started happening," Y.M. replied that she told the interviewer that it started "[s]omewhere between fifth and sixth grade" and she testified that it ended "[e]ighth grade year." Y.M. testified that she told the forensic interviewer that her dad was the one "who was doing it," though Y.M. never specified what "it" was at trial. This constitutes circumstantial evidence supporting the jury's verdict. *See Hooper*, 214 S.W.3d at 13 (noting that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor").

The evidence described above was also sufficient to support conviction on Counts IV and V. A hypothetically correct jury charge would instruct the jury to find Matamoros guilty as charged in Count IV if, on or about August 1, 2011, he (1) intentionally or knowingly (2) caused the anus of Y.M. to contact his sexual organ, and (3) Y.M. was then younger than seventeen years of age. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(D),

14

(c)(1). A hypothetically correct jury charge would instruct the jury to find Matamoros guilty as charged in Count V if, on or about April 1, 2012, he (1) intentionally or knowingly (2) caused the sexual organ of Y.M. to contact his sexual organ, and (3) Y.M. was then younger than seventeen years of age. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(C), (c)(1). As noted, the evidence before the jury included the hospital records containing Y.M.'s medical history, in which she stated that Matamoros would put his penis in her vagina and anus. According to the medical history provided by Y.M., she was in fifth grade when he started doing this, and the last time he did it was around the beginning of April 2012, when she was in eighth grade. This evidence was sufficient to support conviction on Counts IV and V.

The jury is the sole judge of the credibility of witnesses and the weight to be given the testimony, and it may choose to believe some testimony and disbelieve other testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Even if we were to agree with Matamoros that the evidence described above was unreliable, we may not act as a "thirteenth juror" by substituting our judgment for that of the jury. *See Brooks*, 323 S.W.3d at 905. We conclude that the evidence was sufficient to support conviction on all three counts. Matamoros's first three issues are overruled.

## B.    Voir Dire

Matamoros raises two issues alleging error at voir dire. By his twenty-fifth issue, he contends that the trial court erred by not discharging the venire panel, thereby violating his constitutional right to a fair trial, after the prosecutor allegedly asked an improper

15

"commitment question." *See Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App.

2005).[5]  The question at issue was:

> So we know it's going to be really hard if the child has to get up there.  So what if that child completely shuts down and does not say what happened?
>
> Now, I have—I still have to prove my case beyond a reasonable doubt, right?  I do.  So is there anyone here that says if I don't hear from the child who is on that witness stand, even if you prove it beyond a reasonable doubt, I could not convict?  No one?  Okay.

The State argues that Matamoros waived this issue by failing to lodge a contemporaneous objection.  We agree.  As a prerequisite to presenting an issue for appellate review, there must be a contemporaneous objection before the trial court.  TEX. R. APP. P. 33.1(a)(1)(A); *see Halprin v. State*, 170 S.W.3d 111, 120 (Tex. Crim. App. 2005) (holding that appellant who did not object to purportedly improper commitment questions failed to preserve any appellate claim they were improper).  Matamoros's trial counsel did not object to this question when it was asked, and never asserted that the question was an improper commitment question.[6]  Moreover, Matamoros does not

---

[5] In *Sanchez*, the court of criminal appeals explained:

Commitment questions require a venireman to promise that he will base his verdict or course of action on some specific set of facts before he has heard any evidence, much less all of the evidence in its proper context. . . .

[C]ommitment questions are improper (a) when the law does not require the commitment, such that a juror would not be disqualified for cause by being influenced by a particular fact or by having a particular attitude or opinion, or (b) even if the question meets the challenge for cause requirement, if it also includes facts in addition to those necessary to establish a challenge for cause.  An improper commitment question attempts to create a bias or prejudice in the venireman before he has heard the evidence, whereas a proper voir dire question attempts to discover a venireman's preexisting bias or prejudice.

*Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005).

[6] Defense counsel did object to the question at the conclusion of voir dire, but did not object on the basis that the question was an improper commitment question.  Instead, counsel appeared to object based on the mistaken belief that the State cannot, as a matter of law, prove the charged offense beyond a reasonable doubt if the complainant does not testify.  *See, e.g., Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) ("Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial.").

16

contend that the question constituted fundamental error such that no contemporaneous objection was required. *See, e.g., Cade v. State*, 795 S.W.2d 43, 44 (Tex. App.—Houston [1st Dist.] 1990, pet. ref'd) (noting that, "in the absence of fundamental error," appellant waived his issues regarding certain comments made at voir dire because he did not object to them); *see also Avula v. State*, No. 05-13-00405-CR, 2015 WL 3429674, at *6 (Tex. App.—Dallas Jan. 30, 2015, no pet.) (not designated for publication) (noting that "alleged commitment questions must rise to the level of fundamental error to be preserved for appeal" when no trial objection is made). We overrule Matamoros's twenty-fifth issue.

By his twenty-sixth issue, Matamoros contends the trial court erred by denying him "an additional challenge for cause," thereby violating his constitutional right to a fair trial, after his trial counsel indicated he had "inadvertently" used one of his peremptory challenges on the wrong veniremember. At the conclusion of voir dire, defense counsel explained that he intended to excuse veniremember number two, but due to a "writing error," he instead excused veniremember number three. According to counsel, veniremember number two was objectionable because "[h]e made ugly faces during the voir dire."

This issue lacks merit. To establish harm for an erroneous denial of a challenge for cause, the appellant must show on the record that "(1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venire member; (3) his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury." *Comeaux v. State*, 445 S.W.3d 745, 749 (Tex. Crim. App. 2014). Matamoros has not established that an objectionable juror sat on the jury. *See id.* He cites no authority, and we find none,

17

indicating that a veniremember may be challenged for cause because he or she made "ugly faces" at voir dire. *Cf. id.* ("A defendant may challenge a potential juror for cause if he is biased or prejudiced against the defendant or the law on which the State or defendant is entitled to rely."). Matamoros's twenty-sixth issue is overruled.

## C. Evidentiary Rulings

Matamoros's tenth through twentieth issues challenge the trial court's rulings on the admission of evidence. We review such rulings for abuse of discretion. *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008). The rulings will be upheld if they are reasonably supported by the record and are correct under any theory of law applicable to the case. *Id.*

### 1. Comments on Credibility and Legal Conclusions

#### a. Applicable Law

Expert testimony "does not assist the jury," and is therefore inadmissible under Texas Rule of Evidence 702, if it "constitutes 'a direct opinion on the truthfulness' of a child complainant's allegations." *Schutz v. State*, 957 S.W.2d 52, 59 (Tex. Crim. App. 1997) (quoting *Yount v. State*, 872 S.W.2d 706, 708 (Tex. Crim. App. 1993)); *see* TEX. R. EVID. 702 (providing that a witness may testify as an expert if the testimony "will help the trier of fact to understand the evidence or to determine a fact in issue"). But an expert may offer his or her opinion as to a mixed question of law and fact, so long as that opinion is based on proper legal concepts. *Blumenstetter v. State*, 135 S.W.3d 234, 248 (Tex. App.—Texarkana 2004, no pet.) (noting that a mixed question of law and fact is "one in which a standard or measure has been fixed by law and the question is whether the person or conduct measures up to that standard").

18

In order to be admissible, lay opinion testimony must be "rationally based on the witness's perception" and "helpful to clearly understanding the witness's testimony or to determining a fact in issue." TEX. R. EVID. 701. Lay opinion testimony is inadmissible if it constitutes "a legal conclusion" or amounts to "little more than choosing sides as to how the case should ultimately be decided." *Gross v. State*, 730 S.W.2d 104, 106 (Tex. App.—Texarkana 1987, no pet.); *see Boyde v. State*, 513 S.W.2d 588, 590 (Tex. Crim. App. 1974) ("No witness is competent to voice an opinion as to guilt or innocence."). However, an opinion that is otherwise admissible "is not objectionable just because it embraces an ultimate issue." TEX. R. EVID. 704.

### b.    Novoa

By his tenth issue, Matamoros complains that CPS investigator Novoa, a lay witness, was permitted to answer the prosecutor's question as to whether Y.M. was "forthcoming with all of the answers to questions that [Novoa] posed" in her interview with Y.M. Novoa answered the question in the affirmative. Matamoros contends that "forthcoming" is "just another way of saying [Y.M.] was truthful." However, the record reflects that the trial court sustained defense counsel's objection, instructed the jury to disregard Novoa's answer, and asked the prosecutor to rephrase the question. Because the trial court did not rule adversely to Matamoros, this part of his tenth issue has not been preserved for our review.[7] *See* TEX. R. APP. P. 33.1(a)(2).

Matamoros further complains by his tenth issue that the trial court erred in allowing Novoa to testify that CPS's "final disposition" in the case was "reason to believe." He

---

[7] After Matamoros's objection to Novoa's testimony was sustained, the trial court denied defense counsel's motion for mistrial. Matamoros does not complain about that denial by his tenth issue; instead, he only complains that the testimony was inadmissible as a "direct opinion" on the complainant's credibility in violation of Rules of Evidence 701 and 702.

19

contends that this is tantamount to "a statement that tells the jury we in CPS believe that the child is first truthful, and second we believe that the offense occurred."  At trial, defense counsel objected on the basis that the statement is hearsay, violated Matamoros's right to confront witnesses, and is a "conclusion of the witness."

We disagree that the trial court abused its discretion by denying the objection. First, Matamoros has not preserved his argument that this testimony constituted a direct opinion on Y.M.'s credibility because that specific objection was not made at trial.  *See* TEX. R. APP. P. 33.1(a)(1); *Bekendam v. State*, 441 S.W.3d 295, 300 (Tex. Crim. App. 2014) (noting that issues on appeal must comport with objections made at trial).  Second, even if the issue were preserved, Novoa explained that the "reason to believe" disposition was based on facts gathered during her investigation as well as "the consistency of statements" provided by Y.M. during the investigation.  The testimony was therefore "rationally based on [Novoa's] perception" and was not inadmissible just because it embraced an ultimate issue—i.e., whether Matamoros committed sexual abuse.  TEX. R. EVID. 701, 704.  Matamoros's tenth issue is overruled.

### c.    Cruz

By his eleventh issue, Matamoros contends that the trial court erred in allowing police officer Cruz, a lay witness, to testify that she arrested Matamoros for aggravated sexual abuse of a child as a result of her investigation.  Defense counsel objected on the basis that the testimony was a legal conclusion of the witness and the trial court overruled the objection.

We find that the trial court did not abuse its discretion in this regard.  The testimony was rationally based on Cruz's perceptions and her investigation, which she testified

20

included an interview with Y.M., the SANE examination results, and statements provided by "other witnesses in the home." *See* TEX. R. EVID. 701. Again, the testimony is not rendered inadmissible merely because it embraced an ultimate issue. *See* TEX. R. EVID. 704. We overrule Matamoros's eleventh issue.

### d. Eddleman

Matamoros argues by his twelfth issue that the trial court erred, pursuant to Texas Rules of Evidence 701, 702 and 703, in allowing Eddleman, an expert witness: (1) to agree with the prosecutor that Y.M.'s "demeanor and attitude," as evidenced in the hospital records, were "consistent with a person who suffered a traumatic event"; and (2) to testify that the findings in the SANE report were "consistent with the history [Y.M.] gave." At trial, defense counsel specifically objected to this testimony on grounds that it constituted a comment as to "whether or not the witness is telling the truth"; accordingly, the issue has been preserved for our review.

We find that the testimony did not constitute a "direct opinion" on Y.M.'s truthfulness. *See Schutz*, 957 S.W.2d at 59. Instead, Eddleman stated that the findings and observations contained within the hospital records were consistent with Y.M.'s outcry of abuse, which was also contained within the hospital records. This expert testimony was based on Eddleman's review of the facts and data contained in the hospital records and was therefore admissible expert opinion testimony. *See* TEX. R. EVID. 703 ("An expert may base an opinion on facts or data in the case that the expert has been made aware of, reviewed, or personally observed."). Matamoros's twelfth issue is overruled.

21

## 2.     Hearsay

Matamoros argues by his thirteenth issue that the trial court erred by admitting the hospital records, and by his fourteenth issue that the trial court erred by allowing Eddleman to testify regarding those records.  Both issues argue that Y.M.'s medical history, as contained within the hospital records, was inadmissible hearsay.

Hearsay is defined as a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement."  TEX. R. EVID. 801(d).  Hearsay is inadmissible except as provided by statute or rule.  TEX. R. EVID. 802.  Once the opponent of hearsay evidence makes the proper objection, it becomes the burden of the proponent of the evidence to establish that an exception applies that would make the evidence admissible in spite of its hearsay character.  *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008).  One such exception applies to any statement that:  "(A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."  TEX. R. EVID. 803(4).  Matamoros contends that Y.M.'s statement of medical history was inadmissible because it was not made for, nor was it pertinent to, Y.M.'s medical diagnosis or treatment.  *See id.*

In *Taylor*, the Texas Court of Criminal Appeals considered a similar issue.  There, a licensed professional counselor testified as to the child complainant's report of the identity of the man that sexually assaulted her.  *Taylor*, 268 S.W.3d at 577.  Defense counsel objected to the testimony, and the prosecutor contended that the statement was

22

admissible under Rule 803(4) as a statement made for medical diagnosis or treatment. *Id.* The trial court overruled the objection, and the court of appeals affirmed. *Id.*

The court of criminal appeals, after reviewing state and analogous federal case law, noted that the rationale for the rule lies in the "patient's strong motive to tell the truth because diagnosis or treatment will depend in part upon what the patient says." *Id.* (quoting *United States v. Iron Shell*, 633 F.2d 77, 83 (8th Cir. 1980) ("This principle recognizes that life and death decisions are made by physicians in reliance on such facts and as such should have sufficient trustworthiness to be admissible in a court of law.")). Therefore, "it is appropriate to require the proponent of the evidence to show that the out-of-court declarant was aware that the statements were made for [purposes of diagnosis or treatment] and that proper diagnosis or treatment depends upon the veracity of such statements." *Id.* at 588–89. "Absent such an awareness on the declarant's part, we cannot be sure that the self-interested motive to tell the truth, making such statements sufficiently trustworthy to overcome a hearsay objection, is present." *Id.* The Court then observed:

> [R]eclining on a therapist's or psychiatrist's couch is not quite the same as sitting in the emergency room in the immediate aftermath of an injury or on the physician's cold examination table in the interest of diagnosing and curing some exigent disease or ailment. In the latter contexts, it seems only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest. This explains the almost universal tendency of courts under these circumstances to assay the record, not for evidence of such an awareness, but for any evidence that would negate such an awareness, even while recognizing that the burden is on the proponent of the hearsay to show that the Rule 803(4) exception applies.

*Id.* at 589 (citing *Iron Shell*, 633 F.2d at 84; *United States v. Renville*, 779 F.2d 430, 439 (8th Cir. 1985)). The *Taylor* Court found that "[i]t is not readily apparent that knowing the

23

appellant's identity was pertinent to [the counselor's] treatment of [the complainant] for the trauma of the sexual assault . . . ." *Id.* at 591. Therefore, the State did not meet its burden to show that the complainant "understood that truthfulness about the identity of her assailant was important to the efficacy of her treatment for these issues." *Id.*; *see id.* at 592–93 (concluding that the error in admitting the testimony was harmless).

*Taylor* is distinguishable. The evidence at issue here did not involve a mental health therapist, counselor, or psychiatrist—instead, it involved a nurse, in a hospital, providing treatment to Y.M. for a medical condition. In such cases, courts "presume" that a child of a sufficient age "will have an implicit awareness that the doctor's questions are designed to elicit accurate information and that veracity will serve their best interest." *Id.* at 589. And in determining whether a statement was made for purposes of medical diagnosis or treatment, courts review the record for "any evidence that would negate such an awareness." *Id.* Here, Matamoros directs us to no such evidence, and we find none. Instead, the record reflects that Y.M. was fourteen years old at the time of the examination and that she was "[c]alm, cooperative" and made "good eye contact" while giving her statement of medical history. The statement was therefore "made for . . . medical diagnosis or treatment." *See* TEX. R. EVID. 803(4)(A).

We further find that the statement was "reasonably pertinent" to Y.M.'s diagnosis or treatment. *See id.* As the *Taylor* Court noted in dicta, "a statement from a child-declarant revealing the identity of the perpetrator of sexual abuse is pertinent" to medical treatment "because it is important for a physician to discover the extent of the child's 'emotional and psychological injuries'—particularly when the perpetrator might be a family

24

or household member and it is important to remove the child from the abusive environment." *Taylor*, 268 S.W.3d at 589 (citing *Renville*, 779 F.2d at 438[8]).

In light of the foregoing, we conclude that the State met its burden to establish that Y.M.'s statement of medical history, as contained within the hospital records entered into evidence, was admissible under Texas Rule of Evidence 803(4). Matamoros's thirteenth and fourteenth issues are overruled.

### 3.     Right to Confront Witnesses

Matamoros contends by several issues that the admission of certain evidence violated his constitutional right to confront witnesses. His fifteenth and eighteenth issues complain of Eddleman's testimony regarding Y.M.'s medical history; his sixteenth and seventeenth issues complain of the hospital records which contained Y.M.'s medical

---

[8] In *Renville*, another child sex abuse case, the federal Eighth Circuit Court of Appeals ruled that a physician's testimony as to the complainant's identification of her assailant was admissible under the federal equivalent of Rule 803(4). *United States v. Renville*, 779 F.2d 430, 436 (8th Cir. 1985). The court observed that statements regarding fault are "generally irrelevant to an anticipated course of treatment." *Id*. However, "[s]tatements by a child abuse victim to a physician during an examination that the abuser is a member of the victim's immediate household *are* reasonably pertinent to treatment" because "they are reasonably relied on by a physician in treatment or diagnosis." *Id*. at 437. The court elaborated:

> First, child abuse involves more than physical injury; the physician must be attentive to treating the emotional and psychological injuries which accompany this crime. The exact nature and extent of the psychological problems which ensue from child abuse often depend on the identity of the abuser. The general rule banning statements of fault is premised on the assumption that the injury is purely somatic. This is evident from the examples put forth by the courts and commentators discussing the rule. In each example, the medical treatment contemplated was restricted to the physical injuries of the victim; there is no psychological component of treatment which could relate to the identity of the individual at fault. Furthermore, in each example the statement of fault is not relevant to prevention of recurrence of the injury. Sexual abuse of children at home presents a wholly different situation.

> Second, physicians have an obligation, imposed by state law, to prevent an abused child from being returned to an environment in which he or she cannot be adequately protected from recurrent abuse. This obligation is most immediate where the abuser is a member of the victim's household, as in the present case. Information that the abuser is a member of the household is therefore "reasonably pertinent" to a course of treatment which includes removing the child from the home.

*Id*. at 436–38 (citations and footnotes excluded).

history; and his nineteenth issue complains of Corkhill's testimony regarding Y.M.'s statement to her during therapy.

The United States and Texas Constitutions provide that an accused has the right "to be confronted with the witnesses against him" in a criminal prosecution. U.S. CONST. amends. VI, XIV; *see* TEX. CONST. art. I, § 10. In *Crawford v. Washington*, the United States Supreme Court concluded that the admission of a testimonial hearsay statement against a defendant is constitutional "only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." 541 U.S. 36, 59 (2004); *see De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). However, the *Crawford* Court explicitly stated that "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. . . . The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it." *Crawford*, 541 U.S. at 59 n.9; *see Crawford v. State*, 139 S.W.3d 462, 464–65 (Tex. App.—Dallas 2004, pet. ref'd) (holding that *Crawford v. Washington* was inapplicable because "appellant had the opportunity at trial to cross-examine the testifying complainant who was the declarant of the extrajudicial testimonial statement about which he complains").

Y.M. testified at trial and defense counsel had the opportunity to cross-examine her. Accordingly, even assuming that Y.M.'s statements to the SANE nurse and Corkhill were testimonial in nature, Matamoros's Confrontation Clause argument lacks merit.[9] *See Crawford*, 541 U.S. at 59 n.9. We overrule his fifteenth through twentieth issues.

---

[9] Matamoros points out that, in *Morrison v. State*, the Fort Worth court of appeals engaged in a Confrontation Clause analysis even though the complainant testified at trial and was available for cross-examination. No. 02-05-00443-CR, 2007 WL 614143, at *2–3 (Tex. App.—Fort Worth Mar. 1, 2007, pet. ref'd) (mem. op., not designated for publication). There, the child complainant testified at trial that he could

26

**D.      CPS Records**

Matamoros raises three issues involving CPS records which were provided by the State to defense counsel during trial.

**1.      Background**

The record reflects that, on the first day of the guilt-innocence phase of trial, defense counsel asked Novoa whether she prepared a report regarding her interview with Y.M.  Novoa stated that she did prepare a report but did not bring it with her to court.  Defense counsel then asked "the State [to] furnish me with a copy of the report for purposes of the cross-examination of this witness."  The prosecutor responded that the State is "not allowed to, without threat of criminal prosecution, . . . hand over the confidential CPS records" without defense counsel filing "the appropriate motion" and having the trial court perform an *in camera* inspection of the records.  *See* TEX. FAM. CODE ANN. § 261.201 (West, Westlaw through 2015 R.S.); TEX. HUM. RES. CODE ANN. § 40.005

---

not remember what happened.  *Id.* at *3 n.5.  The State offered into evidence a statement of medical history given by the complainant to a forensic interviewer.  *Id.* at *1.  The appellant argued at trial that, in light of the complainant's trial testimony, his statement of medical history was inadmissible because it was "'simply a substitute for . . . testimony that [the complainant] was simply unwilling and unable to give,' translating into testimonial evidence."  *Id.* at *3.  The court of appeals apparently decided to consider the merits of the Confrontation Clause issue because the complainant was technically "unavailable" as that term is defined in the rules of evidence.  *See id.* at *3 n.5 (citing TEX. R. EVID. 804(a)(3) (providing that a declarant is "unavailable" if, among other things, the declarant "testifies to not remembering the subject matter")).  The *Morrison* court went on to hold that the admission of the complainant's medical history statement violated the Confrontation Clause, but the error was harmless.  *Id.* at *3, *6–7.

Here, on the other hand, Y.M. was not "unavailable" as defined in the rules of evidence.  *See* TEX. R. EVID. 804(a) ("A declarant is considered to be unavailable as a witness if the declarant:  (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies; (2) refuses to testify about the subject matter despite a court order to do so; (3) testifies to not remembering the subject matter; (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure the declarant's attendance or testimony.").  In particular, Y.M. did not testify "to not remembering the subject matter," nor was she ever ordered by a court to testify about the subject matter at issue.  *See* TEX. R. EVID. 804(a)(2), (3).  *Morrison* is therefore distinguishable.

27

(West, Westlaw through 2015 R.S.).[10]  The jury was then excused from the courtroom and the trial court heard argument on the issue.  Defense counsel did not dispute that the records were confidential under the statute, but instead asked the trial court to review the documents "at your convenience" for "*Brady* material."  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The prosecutor agreed to submit the documents to the trial court for *in camera* inspection.  The following colloquy then occurred:

> THE COURT:  Okay.  The Court has received those documents.  All right, [defense counsel], do you intend to proceed, give me a chance to look at these documents and come back to this?
>
> [Defense counsel]:  Yes.  I can go ahead with the cross-examination as customary.  I have written down my questions.  I can ask questions now, and then call the witness back for further cross-examination, if the Court please, after you have reviewed those documents.  But even though the State—even though we have this [s]tate

---

[10] Family code section 261.201 provides that case files concerning alleged or suspected abuse are confidential "and may be disclosed only for purposes consistent with this code and applicable federal or state law or under rules adopted by an investigating agency."  TEX. FAM. CODE ANN. § 261.201(a) (West, Westlaw through 2015 R.S.).  The statute provides that a court may order disclosure of such records *sua sponte* if:

  (1)  the order is rendered at a hearing for which all parties have been given notice;

  (2)  the court finds that disclosure of the information is:

   (A)  essential to the administration of justice;  and

   (B)  not likely to endanger the life or safety of:

    (i)  a child who is the subject of the report of alleged or suspected abuse or neglect;

    (ii)  a person who makes a report of alleged or suspected abuse or neglect;  or

    (iii)  any other person who participates in an investigation of reported abuse or neglect or who provides care for the child;  and

  (3)  the order is reduced to writing or made on the record in open court.

*Id.* § 261.201(c).

Section 40.005 of the human resources code provides that a person commits a Class A misdemeanor offense "if the person discloses without authorization confidential information contained in the [Department of Family and Protective Services's] records, papers, files, or communications."  TEX. HUM. RES. CODE ANN. § 40.005(e) (West, Westlaw through 2015 R.S.)

> rule, I suggest that my right to cross-examine the witness under the Sixth Amendment, Fifth and Sixth Amendments, effective counsel and cross-examination under the Fifth Amendment, that that trumps this [s]tate rule. And I also have a right to cross-examine the witness under Article One, Section Ten of the State Constitution.

Defense counsel then continued with his cross-examination of Novoa.

At the conclusion of the day's testimony, the trial court stated on the record that the records are confidential but should be disclosed to defense counsel under section 261.201 of the family code. *See* TEX. FAM. CODE ANN. § 261.201(c). The trial court made the findings required by that statute. *See id.* The court ordered the State to release the records to defense counsel "for a period of 24 hours," beginning that day at 5:15 p.m. and ending the following day at 5:15 p.m. The court further ordered that defense counsel may not copy or allow any other party to view the records.

The following day, after Corkhill testified that Y.M. had reported abuse, defense counsel approached the bench and asked the trial court "to continue the trial at this point until tomorrow so that I can have a chance to read each and every, all and singular pages in this exhibit of material from the—that you gave me yesterday. I looked at them yesterday, apparently not close enough." Defense counsel asked that the documents be made part of the record, and the State requested that they be sealed; the trial court granted both requests.[11] The trial court then denied defense counsel's request for continuance but granted a thirty-minute recess. Defense counsel cross-examined Corkhill later that day.

---

[11] The sealed records, which are part of the appellate record, consist of over 400 printed pages and three audio recordings.

## 2. *Brady* Violation

Matamoros's twenty-first issue argues that, because the State failed to timely disclose the CPS records, he was deprived of his Sixth Amendment right to effective assistance of counsel. By his twenty-second issue, he contends that the State's alleged failure to disclose the CPS records in a timely manner deprived him of his "right to effectively cross examine as guaranteed by the Sixth Amendment" and his right to due process under the Fourteenth Amendment.

In support of these issues, Matamoros cites the seminal case of *Brady v. Maryland*, in which the United States Supreme Court held that "[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Matamoros contends:

> If Appellant had a sufficient amount of time to review the records he would have been prepared to cross examine the witness. He would have been able to object prior to the evidence coming in front of the jury that Y.M. was suicidal. This was prejudicial and its sole intent was to deny the Appellant a fair and impartial trial.

Matamoros did not object at trial to the timing of the State's disclosure of the records at issue on grounds that it violated his due process rights under the Fourteenth Amendment or *Brady*. Accordingly, that issue has not been preserved for our review. *See* TEX. R. APP. P. 33.1(a)(1). Further, Matamoros has cited no authority, and we find none, that either: (1) the timing of disclosure may serve as a basis for a claim under the Sixth Amendment right to effective assistance of counsel; or (2) disclosure during trial constitutes "suppression" for *Brady* purposes. We overrule Matamoros's twenty-first and twenty-second issues.

### 3. Continuance

By his twenty-third issue, Matamoros contends that the trial court erred by failing to grant a recess or continuance after the records were provided to defense counsel, thereby violating his Sixth Amendment right to "effectively and fully cross examine" Corkhill. He argues:

> The CPS records were a surprise and can be indicated by the testimony of the Corkhill describing Y.M.'s suicide thoughts [sic].

> The records are sealed and not available to the Appellate Counsel. Turning over 300 pages of documents prior to cross examination denied the Appellant the right to adequately cross examine Ms. Corkhill the therapist for CPS and Appellant's attorney should have been granted sufficient time to prepare for cross examination.

"We review a trial court's ruling on a motion for continuance for abuse of discretion." *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007). "To establish an abuse of discretion, there must be a showing that the defendant was actually prejudiced by the denial of his motion." *Id.* Matamoros has failed to make that showing. He has not explained how or why his trial counsel was unable to "adequately cross examine" Corkhill, nor has he explained how a continuance would have remedied that problem.[12] The records at issue were voluminous, but they were provided to defense counsel for twenty-four hours—including the hours during which defense counsel cross-examined Corkhill. We overrule Matamoros's twenty-third issue.

---

[12] As noted, Matamoros asserts in his discussion of his twenty-first and twenty-second issues that, had a continuance been granted, his trial counsel "would have been able to object prior to the evidence coming in front of the jury that Y.M. was suicidal." But counsel *was* able to object *after* that testimony was adduced, on the basis that the testimony was irrelevant and was more prejudicial than probative, and the trial court overruled the objections. Matamoros does not challenge those rulings on appeal.

### 4. Rule of Evidence 615

By his twenty-fourth issue, Matamoros contends that the trial court violated Texas Rule of Evidence 615 by failing to order the State to produce the CPS records prior to his trial counsel's cross-examination of Novoa. *See* TEX. R. EVID. 615(a).[13] He argues that his "trial attorney attempted to explain to the Court that he was entitled to the reports prepared by the CPS worker" and that his "task of defending himself regarding the allegations became increasingly more difficult by the trial court's failure to turn over the documents."

At trial, when Novoa testified on cross-examination that she prepared a report regarding her interview with Y.M., defense counsel did not object to the timing of the disclosure of the report nor did he request a continuance. Instead, he informed the trial court that he was prepared to continue with his cross-examination and that he would "call the witness back for further cross-examination after you have reviewed the materials in-camera." The record reflects that the CPS records were provided to defense counsel for twenty-four hours and that counsel declined to recall Novoa to conduct further cross-examination. For these reasons, Matamoros's twenty-fourth issue has not been preserved for our review, and we overrule it. *See* TEX. R. APP. P. 33.1(a).

---

[13] The rule at issue provides:

> After a witness other than the defendant testifies on direct examination, the court, on motion of a party who did not call the witness, must order an attorney for the state or the defendant and the defendant's attorney to produce, for the examination and use of the moving party, any statement of the witness that is in their possession and that relates to the subject matter of the witness's testimony.

TEX. R. EVID. 615(a).

32

**E.     Jury Charge Error**

Matamoros argues by his twenty-seventh issue that the trial court erred by denying his request to instruct the jury, with respect to Count I, on the lesser-included offense of indecency with a child.

We use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser-included offense. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007). The first step of the analysis, which the State concedes is satisfied here, asks whether the lesser-included offense is included within the proof necessary to establish the offense charged. *Rice*, 333 S.W.3d at 144. The second step is to determine whether "there is some evidence in the record which would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.*; *Hall*, 225 S.W.3d at 536. The evidence must establish the lesser-included offense as "a valid, rational alternative to the charged offense." *Rice*, 333 S.W.3d at 144; *Hall*, 225 S.W.3d at 536. Anything more than a scintilla of evidence will be sufficient to entitle a defendant to a charge on the lesser offense. *Hall*, 225 S.W.3d at 536. However, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003). In other words, "such evidence cannot be mere speculation—it must consist of affirmative evidence that both raises the lesser-included offense and rebuts or negates an element of the greater offense." *Wortham v. State*, 412 S.W.3d 552, 558 (Tex. Crim. App. 2013).

Matamoros argues that the evidence adduced as to Count I was "vague" and "does not indicate that Appellant had actual intercourse with Y.M. The inferences from the notes contained within [the hospital records] infer a touching rather than a penetration. The jury should have been able to decide if there was only touching between the dates alleged in the indictment." We disagree. According to the hospital records, Y.M. reported that Matamoros would "put his dick in my front part (patient indicates female sexual organ by pointing)" and "put it in my butt (patient indicates anus by pointing)" and this started when she was in fifth grade and continued until she was in eighth grade. Y.M. also reported that Matamoros "would touch my front part (patient indicates female sexual organ by pointing)" when she was in fourth grade, but this evidence does not "rebut[] or negate[] an element of the greater offense." *See id.* Matamoros has directed us to no other evidence, and we find none in the record, establishing that indecency with a child was "a valid, rational alternative to" continuous sexual abuse of a child. *See Rice*, 333 S.W.3d at 144; *Hall*, 225 S.W.3d at 536. Therefore, he was not entitled to his requested instruction. We overrule Matamoros's twenty-seventh issue.

## F. Improper Closing Argument

Matamoros argues by his fourth through ninth issues that the prosecutor made improper remarks during closing argument at the guilt-innocence phase of trial and that the trial court erred by failing to grant a mistrial as a result of the remarks. Matamoros takes issue with four separate remarks made by the prosecutor during closing argument.

### 1. Applicable Law and Standard of Review

Permissible jury argument falls into four distinct and limited categories: (1) summary of the evidence; (2) reasonable deductions from the evidence; (3) response to

opposing counsel's argument; or (4) plea for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). We examine alleged improper argument in light of the facts adduced at trial and in the context of the entire argument. *McGee v. State*, 114 S.W.2d 229, 239 (Tex. Crim. App. 1989). Even if an argument is improper, it will not constitute grounds for reversal unless the statements to the jury injected new and harmful facts to the case, or were so extreme and manifestly improper that they deprived appellant of a fair and impartial trial. *Brown*, 270 S.W.3d at 573 n.3; *McGee*, 114 S.W.2d at 238. "In determining whether jury argument is extreme or manifestly improper, we look at the entire record of final arguments to determine if there was a willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Brown*, 270 S.W.3d at 573 n.3. "It is not enough that the prosecutors' remarks were undesirable or even universally condemned. . . . The relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

A trial court's ruling on an objection to improper jury argument is reviewed for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004). We also review a trial court's denial of a mistrial for abuse of discretion. *Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011).

### 2. Reference to Facts Outside Evidence

The first remark about which Matamoros complains was as follows: "What you saw in this courtroom is a man that was able to intimidate his family into silence. We ask that you not let him get away with that." Defense counsel objected to the remark as

outside the evidence. *See Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973) ("It is the duty of trial counsel to confine their arguments to the record; reference to facts that are neither in evidence nor inferable from the evidence is therefore improper. . . . The arguments that go beyond these areas too often place before the jury unsworn, and most times believable, testimony of the attorney."). The trial court sustained the objection, instructed the jury to disregard the statement, and denied defense counsel's motion for mistrial. On appeal, Matamoros contends by his fourth through eighth issues that this argument violated: (1) his right to a fair and impartial trial under article I, section 10 of the Texas Constitution and the Fourteenth Amendment to the United States Constitution; and (2) his right to remain silent under article I, section 10 of the Texas Constitution, article 38.08 of the code of criminal procedure, and the Sixth Amendment to the United States Constitution.

The State contends that Matamoros waived this issue because he did not object to a remark made earlier by the prosecutor in her closing argument, to-wit: "They may answer to him. They may be intimidated by him. They may get up here and lie and cover up for him, but he answers to you. He answers to you."

We agree that the issue was waived. Any error regarding improper argument will be waived where the prosecutor "previously made substantially the same argument without objection." *Temple v. State*, 342 S.W.3d 572, 610 (Tex. App.—Houston [14th Dist.] 2010), *aff'd*, 390 S.W.3d 341 (Tex. Crim. App. 2013). Here, the prosecutor previously suggested, without objection, that Matamoros intimidated his family into not testifying or testifying falsely. Accordingly, any complaint regarding the subsequent

36

statement is waived.  We overrule Matamoros's sixth, seventh, and eighth issues, as well as the portions of his fourth and fifth issues pertaining to this remark.

### 3.    Personal Opinion of the Prosecutor

Matamoros next challenges the following remark made by the prosecutor during closing argument:

> Our indictment was seven counts.  It was a continuous sexual abuse of a child.  It had an indecency count, a sexual assault, three sexual assaults, two more indecencies.  We are out to seek justice.

> We recognize that because [Y.M.] stood up here like we told you she would and was unable to talk about sexual acts, we have decided, we have elected to drop counts two, three, six and seven because we recognize that those elements were not met from this witness stand.  And we're not going to pretend that they were.  We believe that they took place, but that did not come from that witness stand.

Defense counsel objected on the grounds that the prosecutor was "expressing her personal opinion about the guilt of the defendant."  The trial court sustained the objection, instructed the jury "to disregard the personal opinion of the prosecutor," and denied Matamoros's motion for mistrial.  Matamoros claims by his fourth and fifth issues on appeal that the remark violated his right to a fair and impartial trial under article I, section 10 of the Texas Constitution and the Fourteenth Amendment to the United States Constitution.

The State contends that the remarks were proper, citing *Maupin v. State*, 930 S.W.2d 267, 270 (Tex. App.—Fort Worth 1996, pet. ref'd) and *Frias v. State*, 775 S.W.2d 871, 874–75 (Tex. App.—Fort Worth 1989, no pet.).  In *Maupin*, the Fort Worth Court of Appeals observed that it is "improper for a prosecutor to inject personal opinion in statements to the jury."  930 S.W.2d at 269.  Nevertheless, "there is often more to the

prohibition against giving personal opinion than would be indicated by the literal meaning of the prohibition." *Id.* at 270.

> Whether the prosecutor says "You should find him guilty" or "I submit you should find him guilty" or "I don't think a not guilty verdict is appropriate and I don't think you do either"; any of this phraseology could be called "giving a personal opinion" when in plain truth it is not violative of the prohibition against giving a personal opinion. . . . When phraseology that sounds like personal opinion, such as the above, is, either overtly or inferentially, combined with special expertise, it is *that* combination that is prohibited.

*Id.* at 270 (citing *Johnson v. State*, 698 S.W.2d 154, 167 (Tex. Crim. App. 1985)). In *Maupin*, the prosecutor stated: "Ladies and gentlemen, I told you I was appalled in closing argument and I'm appalled now, that he would get up here and ask you for something in the middle. Because ten years is what this man deserves." *Id.* at 269. The court found that this was not an improper expression of personal opinion; instead, "[t]he prosecutor in very plain words gave the position of the State of Texas in the case, and that position was that these were not probation cases." *Id.* at 270. In *Frias*, the Fort Worth court came to the same conclusion where the prosecutor stated: "I don't think probation is appropriate and I don't think that you think probation is appropriate." 775 S.W.2d at 875.

The remark at issue here is distinguishable from the ones made in *Maupin* and *Frias*. In those cases, the prosecutor merely explained, in the form of a personal opinion, the State's position with regard to punishment for the offense actually at issue at trial. Here, on the other hand, by stating that "[w]e believe that [the offenses alleged in the dismissed counts] took place," the prosecutor offered her opinion as to allegations which were not at issue before the jury and, as the prosecutor herself acknowledged in the very same sentence, were not supported by the evidence adduced from "that witness stand." Moreover, by implying that she knew the allegations were true *despite* the lack of evidence, she implied that she had "special expertise" regarding the case to which the

38

jury was not privy. *See Maupin*, 930 S.W.2d at 270. The remark was improper and the trial court correctly sustained Matamoros's objection.

Having found that the prosecutor's statement was improper, we must next determine whether the trial court's instruction to disregard was sufficient to cure the error, or whether the trial court should have instead granted a mistrial. *See Archie*, 340 S.W.3d at 738–39 (noting that, when the trial court sustains an objection to argument and instructs the jury to disregard, "the proper issue is whether the refusal to grant the mistrial was an abuse of discretion"). In determining whether the trial court abused its discretion in denying a mistrial, we balance: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge), and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Id.* at 739 (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).

First, as to the severity of the misconduct, we note that the prosecutor's statement regarding her opinion of the dismissed charges was isolated and was not emphasized. Moreover, the jurors were aware that Matamoros was indicted on seven different counts and they therefore knew that the State's position, at least initially, was that Matamoros was guilty on each count. From the perspective of the jurors, it stands to reason that the State would not have indicted Matamoros on a criminal charge if it did not believe that he was guilty of the charge. The prosecutor's statement that she believed Matamoros was guilty of the dismissed counts, therefore, was arguably no more prejudicial than was the original indictment.

39

Second, as to curative measures, the trial court promptly instructed the jury to disregard the statement. We generally presume that jurors follow the trial court's instructions and that an instruction to disregard an offending remark will cure any prejudice. *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005). "The presumption is refutable, but the appellant must rebut the presumption by pointing to evidence that the jury failed to follow the trial court's instruction." *Id.* Matamoros directs us to no evidence, and we find none, showing that the jury failed to follow the trial court's instruction.

Finally, as to the certainty of evidence absent the offending remark, we observe that the evidence supporting conviction was not overwhelming. In fact, given that Y.M. refused to give details and the SANE nurse failed to testify, the direct evidence supporting conviction consisted entirely of hearsay. Nevertheless, we have already ruled that the objected-to hearsay evidence was admissible under applicable law. Moreover, there was no evidence that contradicted, either directly or indirectly, the content of Y.M.'s outcries. The outcries, as relayed by Eddleman and Corkhill, were consistent. The jury was therefore likely to have come to the same conclusion regarding the credibility of the outcries even if the prosecutor had not made the improper remark.

Having reviewed the factors enumerated in *Archie*, 340 S.W.3d at 739, we find that the record does not reveal a "willful and calculated effort on the part of the State to deprive appellant of a fair and impartial trial." *Brown*, 270 S.W.3d at 573 n.3. The trial court did not abuse its discretion in denying Matamoros's motion for mistrial. We overrule the portions of Matamoros's fourth and fifth issues pertaining to this remark.

### 4. Community Expectations

The third remark from the prosecutor's closing argument about which Matamoros complains is the following: "Sexual abuse of children requires our community to stand up together on their behalf to protect our kids." Defense counsel objected on grounds that the remark constituted an impermissible reference to community expectations. The trial court overruled the objection. Matamoros claims by his fourth and fifth issues on appeal that the remark violated his right to a fair and impartial trial under article I, section 10 of the Texas Constitution and the Fourteenth Amendment to the United States Constitution.

During closing arguments, the State is allowed to argue the impact of the jury's verdict on the community, but it may not "argue that the community or any particular segment of the community expects or demands" a guilty verdict. *Borjan v. State*, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990) (en banc); *see Cortez v. State*, 683 S.W.2d 419, 421 (Tex. Crim. App. 1984) (holding that "[T]he only punishment that you can assess that would be any satisfaction at all to the people of this county would be life" was improper argument); *Mata v. State*, 952 S.W.2d 30, 33 (Tex. App.—San Antonio 1997, no pet.) (holding that "[P]robation is not what this community and what the State would want" was improper argument). But mere references to "the community" do not constitute an improper appeal to community expectations. *See Harris v. State*, 122 S.W.3d 871, 888 (Tex. App.—Fort Worth 2003, pet. ref'd) (holding that "As jurors in this case, you represent the community. . . . Your verdict sends a message to the community, and it sends a message to this Defendant" was not improper); *Barcenes v. State*, 940 S.W.2d 739, 749 (Tex. App.—San Antonio 1997, pet. ref'd); *Goff v. State*, 794 S.W.2d 126, 127–28 (Tex. App.–Austin 1990, pet. ref'd) (holding that "If you want to find somebody like this innocent

of the charge, you may do it, but you will have to explain your actions to the community" was not improper).

We find that the prosecutor's statement here was not an improper attempt to induce the jury to reach a verdict that the community would desire or expect. *See Borjan*, 787 S.W.2d at 56. Instead, it was a plea for law enforcement, which is permissible in closing argument. *Brown*, 270 S.W.3d at 570. The mere fact that the prosecutor used the word "community" does not render the argument improper. *See Harris*, 122 S.W.3d at 888; *Barcenes*, 940 S.W.2d at 749; *Goff*, 794 S.W.2d at 127–28. The trial court did not abuse its discretion in overruling Matamoros's objection. We overrule the portions of Matamoros's fourth and fifth issues pertaining to this remark.

### 5. Striking Over Shoulders of Counsel

Finally, Matamoros takes issue with the following statement made by the prosecutor during closing argument:

> And then you have [Y.M.]. "I don't want to talk about it. I don't want to talk about that. Well, what did you say? Well, I don't want to talk about that." Ladies and gentlemen, that is not taking it back. That is not saying it didn't happen. That is not saying anything like a recantation. That is saying it happened and I don't want to talk about it. There is a very big distinction between that and a recantation, which is how [defense counsel] has characterized it.

Defense counsel objected that "the State is attacking the defendant over the shoulders of his counsel." The trial court overruled the objection. By his ninth issue on appeal, Matamoros contends that the argument violated his right to a fair and impartial trial under article I, section 10 of the Texas Constitution.

We disagree. Argument that attacks the defense attorney—that is, strikes at a defendant over the shoulders of counsel—is improper. *Davis v. State*, 329 S.W.3d 798, 821 (Tex. Crim. App. 2010); *Mosley*, 983 S.W.2d at 259 (holding that "a prosecutor runs

42

a risk of improperly striking at a defendant over the shoulder of counsel when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character"). However, the court of criminal appeals has distinguished between improper remarks directed at defense counsel himself and remarks which attack or disparage counsel's argument or theory of defense. *See Coble v. State*, 871 S.W.2d 192, 203–05 (Tex. Crim. App. 1993) (en banc) (approving the prosecutor's argument concerning a saying among lawyers that if you have neither the facts or the law on your side, "you argue something ridiculous"); *Gorman v. State*, 480 S.W.2d 188, 190 (Tex. Crim. App. 1972) (explaining that the prosecutor's comment "[d]on't let him smoke-screen you, he has smoke-screened you enough" was in response to defense counsel's argument attempting to minimize the defendant's prior criminal record); *Cueva v. State*, 339 S.W.3d 839, 882–83 (Tex. App.—Corpus Christi 2011, pet. ref'd) (finding that the prosecutor's argument that "a standard tactic of defense attorneys, when your victim has done something indefensible, [is to] put the victim on trial" was not improper because it "attacked the defense tactic and not the defense attorney himself"). Here, the prosecutor was addressing defense counsel's theory that, by refusing to testify regarding the details of the offense, Y.M. essentially recanted her previous outcries of abuse.[14] This was not an attempt to attack defense counsel personally or impugn

---

[14] In opening argument, defense counsel asked: "Why did [Y.M.] retract her statement?" In closing argument, counsel stated:

> Here's this witness saying, "I don't want to go forward with this." Well, you figure out how come. I suggest to you that you consider that it's just not true.

> Here's the State's chief witness saying, "I don't want to go through with it." We know what the prosecutors want. We know what Ms. Eddleman wanted. We know what Ms. Novoa wanted, but what did the main witness want? She said, "I want to withdraw this." And I had to fight to get that in front of you. And you got it. I appreciate it if you carefully look at it and think about why would the State's main witness say, "I don't want to go through with this?" Well, maybe she doesn't want to tell a lie.

counsel's character; instead, it was an attack on Matamoros's defensive theory. Accordingly, the trial court did not abuse its discretion in overruling Matamoros's objection. We overrule his ninth issue.

## G.    Cumulative Error

By his twenty-eighth and final issue, Matamoros contends that his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and sections 10, 13, and 19 of Article I of the Texas Constitution were violated due to the "numerous denials of mistrials, [and] the cumulation of the error [sic]" at trial. He notes that, at the guilt-innocence phase of trial, defense counsel moved for mistrial at least twenty-five times and the trial court issued at least nine instructions to disregard inadmissible testimony or improper argument offered by the State.[15]

---

[15] In particular, the trial court sustained defense counsel's objections and issued instructions to disregard as to the following:

(1)  A statement by Novoa agreeing with the prosecutor that Y.M. was "forthcoming" with answers to questions that she posed during her interview;

(2)  A statement by Novoa agreeing with the prosecutor that Y.M. "freely g[a]ve [her] answers" during the interview;

(3)  A statement by Novoa that CPS's "reason to believe" disposition was based on "a consistent outcry from [Y.M.]" and "confirmation of her siblings";

(4)  A question by the prosecutor to Novoa asking if she "stand[s] behind the disposition";

(5)  Cruz's affirmative answer to the prosecutor's question:  "And as one who observed [Y.M.'s interview at the Children's Advocacy Center], did you learn that a criminal offense had taken place?";

(6)  Cruz's answer of "Two weeks" to the prosecutor's question:  "Now, in the course of your investigation, did you learn in [sic] the last incident of abuse had taken place?"

(7)  Eddleman's answer of "Could be, but unlikely" to defense counsel's question as to whether a "person's own finger" could cause a tear in the hymen;

(8)  The prosecutor's statement during closing argument, with respect to the dismissed charges, that "We believe that they took place, but that did not come from that witness stand"; and

(9)  The prosecutor's statement during closing argument that Matamoros "was able to intimidate his family members into silence."

After issuing instructions to disregard each of the above statements, the trial court denied defense counsel's motions for mistrial.

44

The Texas Court of Criminal Appeals has recognized that "a number of errors may be found harmful in their cumulative effect even if each error, considered separately, would be harmless." *Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex. Crim. App. 1999). But non-errors may not cumulatively produce harm. *See Hughes v. State*, 24 S.W.3d 833, 844 (Tex. Crim. App. 2000). Having found no reversible error in our review of Matamoros's other appellate issues, we conclude that the cumulative error doctrine does not apply. Matamoros's twenty-eighth issue is therefore overruled.

### III. CONCLUSION

The trial court's judgment is affirmed.

DORI CONTRERAS GARZA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
5th day of November, 2015.